| | |
|---|---|
| James Park Taylor | Kyle A. Gray |
| Jon E. Ellingson | Adrian A. Miller |
| ACLU of Montana | Holland & Hart LLP |
| 241 E. Alder | 401 N. 31st Street |
| P.O. Box 9138 | Suite 1500 |
| Missoula, MT 59807 | Billings, MT 59101-1277 |
| Telephone: (406) 549-6159 | Telephone: (406) 252-2166 |
| Email: jpt42@hotmail.com | Email: kgray@hollandandhart.com |
| jone@aclumontana.org | aamiller@hollandhart.com |
| | |
| Jeffrey A. Simmons | Anna Conley |
| Foley & Lardner LLP | Attorney At Law |
| 150 East Gilman Street | P.O. Box 9101 |
| Madison, WI 53703-1482 | Missoula, MT 59807 |
| Telephone: (608) 258-4267 | Telephone: (406) 830-0367 |
| Email: jsimmons@foley.com | Email: anna@annaconley.com |

*Attorneys for Plaintiff Disability Rights Montana, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MONTANA, INC., on behalf of all persons sentenced to the custody of the Montana Department of Public Health and Human Services as Guilty But Mentally Ill and who have been or may be transferred from the Montana State Hospital to the Montana State Prison,<br><br>    Plaintiff,<br><br>vs.<br><br>RICHARD OPPER, in his official capacity as Director of the Montana | Civil No. CV-14-25-BU-SEH<br><br>**SECOND AMENDED COMPLAINT AS TO DEFENDANTS OPPER AND GLUECKERT** |

| | |
|---|---|
| Department of Public Health and Human Services; and | )<br>)<br>) |
| JOHN GLUECKERT, in his official capacity as Administrator of the Montana State Hospital; | )<br>)<br>) |
| Defendants. | |

For its Second Amended Complaint against Defendants Richard Opper and John Glueckert, plaintiff Disability Rights Montana, Inc. ("DRM") alleges as follows:

1.  This is an action brought on behalf of all prisoners who have been sentenced to the custody of the Montana Department of Public Health and Human Services ("DPHHS") as "Guilty But Mentally Ill" ("GBMI") and who have been or may be transferred to the Montana State Prison, pursuant to Mont. Code Ann. § 46-14-312.  DRM brings claims on behalf of these prisoners pursuant to 42 U.S.C. § 1983 for ongoing violations of their right to procedural due process under the Fifth and Fourteenth Amendments of the United States Constitutions.

## THE PARTIES

2.  Plaintiff DRM is a not-for-profit Montana corporation and the authorized protection and advocacy agency for Montana pursuant to the federal Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 et seq.  Among other things, DRM is authorized by federal law to pursue

legal remedies to ensure that individuals with mental illness in state institutions are protected from abuse and neglect. Because prisoners with mental illness are DRM's constituents, DRM has associational standing to bring claims on behalf of prisoners with mental illness as alleged in this lawsuit.

3. Individuals who have received or are receiving mental health services, or their family members, are substantially involved in DRM's governance, including serving on DRM's board of directors. DRM's board of directors is comprised of ten members, two of whom either have received or are receiving mental health services, and three of whom have family members who have received or are receiving mental health services. DRM's advisory council has eight members, seven of whom either have received or are receiving mental health services and one of whom has a family member who has received or is receiving mental health services.

4. Defendant Richard Opper is Director of DPHHS and is sued in his official capacity. At all times relevant to this Second Amended Complaint Director Opper was acting within the scope of his employment and under color of state law in his capacity as Director of DPHHS. The Director of DPHHS is the custodian of every GBMI individual until the sentence of the individual is completely served or until the sentence is amended to remove the individual from the custody of the Director and transfer the individual to the Department of

Corrections pursuant to § 46-14-312 (3) and (4), MCA, regardless of whether the individual is housed at the Montana State Hospital ("State Hospital" or "Hospital") or the Prison. In his official capacity, Director Opper is responsible for administering the policies and practices at issue with respect to the claim against him and has the authority to implement the relief sought in this action.

5. Defendant John Glueckert is the Administrator of the State Hospital and is sued in his official capacity. At all times relevant to this Second Amended Complaint, Mr. Glueckert was acting within the scope of his employment and under color of state law in his capacity as Administrator of the State Hospital. No recommendation to the Director of DPHHS for transferring a GBMI prisoner is made without the approval of the Administrator of the State Hospital. In his official capacity, Mr. Glueckert is responsible for administering the policies and practices at issue with respect to the claim against him and has the authority to implement the relief sought in this action.

6. Defendants Opper and Glueckert are referred to collectively as the "DPHHS Defendants."

## JURISDICTION AND VENUE

7. This court has jurisdiction of DRM's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), and is proper in this Division pursuant to Local Rule 3.2(b), *inter alia*, because the unlawful transfers from the State Hospital occurred in Deer Lodge County.

9. This Court has authority pursuant to 42 U.S.C. § 1983 to order injunctive and declaratory relief.

## COUNT I

**Denial of Procedural Due Process in Violation of the Fifth and Fourteenth Amendments to the United States Constitution**

10. DRM incorporates the allegations of paragraphs 1 - 9 as if fully restated here.

11. DRM alleges that the DPHHS Defendants have violated the right of individuals sentenced Guilty But Mentally Ill to procedural due process as provided by the Fifth and Fourteenth Amendments to the United States Constitution.

12. DRM brings this claim on behalf of all individuals who have been sentenced by a court as Guilty But Mentally Ill and have been transferred or may be transferred from the State Hospital to the State Prison without procedural due process.

13. Individuals who have been found by a court to be Guilty But Mentally Ill and committed to the custody of DPHHS possess a liberty interest to be free from transfers out of the State Hospital and into other facilities, when the result of

5

such transfers may be detrimental to the GBMI individuals' custody, care, and treatment needs.

14. The GBMI individuals' liberty interest arises through statutory and constitutional law. For example, § 46-14-312, MCA, requires the Director of DPHHS to transfer individuals sentenced GBMI to the Prison only if the Prison "will better serve the [patient's] custody, care and treatment needs," and only after due consideration of the recommendations of the professionals providing treatment to the defendant and recommendations of the professionals who have evaluated the defendant. Montana Code Ann. § 53-21-142(B) further guarantees that individuals who are committed to the State Hospital will have "the least restrictive conditions necessary to achieve the purpose of commitment;" conditions can "restrict the patient's liberty only to the extent necessary and consistent with the patient's treatment need, applicable requirements of law, and judicial orders."

15. The DPHHS Defendants have engaged in a consistent and ongoing practice of transferring GBMI individuals from the State Hospital to the State Prison without procedural due process. DRM is aware of at least four instances in which the DPHHS Defendants transferred GBMI individuals from the State Hospital to the State Prison without any of the following procedural safeguards:

    a. Reasonable notice that DPHHS was beginning the process that resulted in the individual's transfer to the Prison.

 b. Reasonable notice of the time and place of the meeting of the Forensic Review Board ("FRB") at which time the individual's possible transfer would be considered.

 c. A list of the witnesses and documents that would be presented in support of the request to transfer.

 d. The assistance of legal counsel in presenting the individual's case to the FRB.

 e. The opportunity at, and/or before, the meeting of the FRB:

- to confront and cross examine the witnesses who were heard by the FRB;
- to examine the documents that the FRB relied upon in reaching its recommendation and present testimony regarding the documents;
- to present his own testimony in person; and
- to present his own witnesses and documents on the subject, including without limitation treating psychologists and physicians.

 f. An independent decision-maker making transfer determinations.

      g.      An independent evaluation by a qualified mental health professional regarding whether a transfer to the Prison would better serve the individual's custody, care, and treatment needs.

      h.      A written statement by the decision-maker setting forth the basis for the transfer determination and the evidence relied upon in reaching that determination.

      i.      Timely notice of the recommendation of the FRB to the Director.

      j.      The opportunity to contest the recommendation before the Director.

      k.      Notice that the Director had adopted the recommendations of the FRB.

16.      DPHHS currently reports that it transfers to the Department of Corrections an average of three GBMI individuals annually.

17.      The opportunity to appeal the decision of the Director.

In all four instances known to DRM, the GBMI individuals did not learn of the decision to transfer them to the State Prison until the day the transfer occurred. These unlawful transfers began at least as early as 2007 and the most recent of these transfers known to DRM occurred in December 2013.

18. The four prisoners described above are James Larson, James Patrick, Shaun Morrison, and Justin Bear. All four of these prisoners have a history of suffering from serious mental illness.

19. James Larson has a history of suffering from schizophrenia.

20. James Patrick has a history of psychotic disorders.

21. Shaun Morrison has a history of major depressive disorder.

22. Justin Bear has a history of schizophrenia.

23. DRM believes that the DPHHS Defendants' practice of denying GBMI individuals procedural due process is ongoing because of DPHHS's long history of this practice and, at present, DPHHS is actively opposing legislation that would require it to provide the procedural protections that DRM alleges DPHHS is denying to the GBMI individuals in its custody.

24. By transferring GBMI individuals to the State Prison, the DPHHS Defendants are subjecting those individuals to conditions that pose an atypical and significant hardship because the State Prison does not provide proper care to individuals suffering from serious mental illness and subjects such individuals to conditions that exacerbate their mental illness.

25. The State Hospital has at least seven full-time psychiatrists available at all times for a population of approximately 209 patients, resulting in a psychiatrist-patient ratio of approximately 1 to 28. Every GBMI patient is

assigned a treatment team, including a psychiatrist or advance practice psychiatric nurse, a social worker and a nurse, and in some cases, a treatment specialist and a recreation therapist.  At the State Prison by contrast, there is only one psychiatrist who serves approximately 275 prisoners on his caseload.

26.	In addition, the following practices at the State Prison impose an atypical and significant hardship on prisoners sentenced GBMI:

    a.    placing prisoners with serious mental illness in various forms of solitary confinement for 22 to 24 hours per day for months and years at a time;

    b.    placing prisoners with serious mental illness on behavior management plans that involve solitary confinement and extreme restrictions of privileges;

    c.    having no standards for determining whether placing a prisoner with serious mental illness in solitary confinement or on a behavior management plan will be harmful to the prisoner's mental health;

    d.    engaging in a pattern of refusing to properly diagnose prisoners as suffering from serious mental illness;

    e.    engaging in a pattern of refusing to provide prisoners with medications for serious mental illness;

      f.     failing to have a system in place to review and evaluate the diagnosing and prescribing practices of its mental health staff;

      g.     failing to have a system to classify prisoners according to their mental health needs;

      h.     failing to adequately consider prisoners' serious mental illnesses when making decisions about prisoners' housing and custody levels; and

      i.     having no system in place for auditing, evaluating or ensuring the effectiveness of its mental health care program in treating prisoners with serious mental illness.

27. Three of the four prisoners identified by DRM as having been transferred to the State Prison without procedural due process were subsequently placed in solitary confinement and on behavior management plans that are dangerous to their mental health.

28. DRM seeks a declaration that the practices of the DPHHS Defendants deny GBMI individuals procedural due process in violation of the Fifth and Fourteenth Amendments to the United State Constitution and an injunction requiring the DPHHS Defendants to provide all GBMI individuals the procedural protections necessary to protect their interests.

## PRAYER FOR RELIEF

**WHEREFORE, plaintiff Disability Rights Montana, Inc. prays for an order and judgment in which this Court:**

    A.    Exercises continuing jurisdiction over this action;

    B.    Issues declaratory judgment that the DPHHS Defendants' acts violate the prisoners' rights to procedural due process protected by the U.S. Constitution and that these acts and omissions continue to cause an ongoing risk of the violation of those rights;

    C.    Issues injunctive relief to stop the constitutional violations described above and requires the DPHHS Defendants to provide individuals sentenced Guilty But Mentally Ill with all of the procedural protections required by the United States Constitution.

    D.    Awards reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988; and

    E.    Orders all other relief the Court deems appropriate.

Respectfully submitted this 8th day of May, 2015.

> *s/Jeffrey A. Simmons*
> Jeffrey A. Simmons (*Pro Hac Vice*)
> Foley & Lardner LLP
> 150 East Gilman Street
> Madison, WI 53703-1482
> Telephone: (608) 258-4267
> Email: jsimmons@foley.com

*s/Jon E. Ellingson*
Jon E. Ellingson
James Park Taylor
ACLU of Montana
241 E. Alder
Missoula, MT  59807
Telephone:  (406) 549-6159
Email:  jpt42@hotmail.com
           jonelling@gmail.com

Anna Conley
Attorney At Law
P.O. Box 9101
Missoula, MT  59807
Telephone:  (406) 830-0367
Email:  anna@annaconley.com



Kyle A. Gray
Adrian A. Miller
Holland & Hart LLP
401 N. 31st Street, Suite 1500
Billings, MT  59101-1277
Telephone:  (406) 252-2166
Email:  kgray@hollandandhart.com
           aamiller@hollandhart.com

13