Francis X. Clinch
Paulette Kohman
Special Assistant Attorneys General
Office of Legal Affairs
Department of Public Health and Human Services
P.O. Box 4210
Helena, MT 59604-4210
Tel: (406) 444-1258
Fax: (406)444-9744
fclinch@mt.gov
pkohman@mt.gov

Attorneys for Defendants Opper and Glueckert

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MONTANA, INC., Plaintiff, on behalf of all persons sentenced to the custody of the Montana Department of Public Health and Human Services as Guilty But Mentally Ill and who have been or may be transferred from the Montana State Hospital to the Montana State Prison,<br><br>          Plaintiff,<br><br>    v.<br><br>RICHARD OPPER, in his official capacity as Director of the Montana Department of Public Health and Human Services; and JOHN GLUECKERT, in his official capacity as Administrator of the Montana State Hospital;<br><br>       Defendants. | Civil Action No. CV-14-25-BU-SEH<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF AUTHORTIES..................................................................................... ii

EXHIBIT LIST ................................................................................................... iv

INTRODUCTION.................................................................................................1

STANDARD FOR DISMISSAL...........................................................................3

STATUTORY FRAMEWORK..............................................................................4

ARGUMENT ........................................................................................................7

    1.    The legal standards to be applied to this Second Amended Complaint are the law of the case as expressed in Doc. 33........................................................7

    2.    The Complaint does not present a cognizable claim under the law of the case and the applicable federal due process standard for prisoner transfers. ......7

        A. Montana's prisoner transfer statute does not grant prisoners a federally-recognized liberty interest in remaining in a mental health facility for the entire duration of the sentence. ...................................8

        B. The fourteenth amendment of the U.S. Constitution does not recognize a prisoner's liberty interest in avoiding state transfer to the general population of a state prison while serving a sentence. ...........12

    3.    Taken as true for the purposes of this Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 8(a)(2), DRM's well-pleaded factual allegations in the SAC do not state a plausible claim to relief. ...................................................................15

        A. The SAC contains conclusory allegations and formulaic recitations which must be disregarded. ...............................................................15

        B. The remaining allegations in the SAC are not specific enough to suggest that either defendant fails to follow the unchallenged state law transfer procedure, or participates in imposing "atypical or significant hardships" on DRM's constituents....................................................16

    4.    Further amendment would be futile. .................................................19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORTIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 3, 15, 19
*Bailey v. Gardebring*, 940 F.2d 1150 (8th Cir. 1991) ............................................14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 3, 15, 19
*Carver v. Lehman*, 558 F.3d 869, 875 (9th Cir. 2009) ............................................8
*Chappell v. Mandeville*, 706 F.3d 1052 (9th Cir. 2013) ..................................... 7, 11
*Chavez v. Martinez*, 538 U.S. 760, 780 (U.S. 2003) ..............................................8
*Cruz v. Ward*, 558 F.2d 658 (2d Cir., 1977) .........................................................14
*Fischer Int'l Student Exchange, Inc.,* 2015 U.S. Dist. LEXIS 58779 .....................4
*Hall v. City of L.A.*, 697 F.3d 1059 (9th Cir. 2011) ................................................7
*Jackson v. Fair*, 846 F.2d 811 (1st Cir, 1988) .......................................................14
*Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997) ....................................................7
*Ky. Dept. of Correct. v. Thompson,* 490 U.S. 454, 460 (1989) ..............................12
*Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. Cal. 2001) .........................8
*Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452-453,
(9th Cir. 2000) ........................................................................................................7
*Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986) .......3
*Meachum v. Fano*, 427 U.S. 215, 225 (1976) .................................................. 10, 14
*Montayne v. Haymes,* 427 U.S. 236 (1976) ...........................................................14
*Myron v. Terhune,* 476 F.3d 716, 718 (9th Cir. Cal. 2007) ....................................13
*Olim v. Wakinekona,* 461 U.S. 238 (1983) ...................................................... 8, 14
*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ........................12
*Robertson v. Virga*, 2014 U.S. Dist. LEXIS 54357 (N.D. Cal. Apr. 17, 2014) ......14
*Sandin v. Conner,* 515 U.S. 472, 483-84 (1995) ...................................... 7, 11, 12, 13
*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) .........................17
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......................3
*United States v. Smith*, 389 F.3d 944, 948-949 (9th Cir. 2004) ..............................7
*Vitek v. Jones,* 445 U.S. 480, 493 (1980) ..............................................................14
*Washington v. Harper,* 494 U.S. 210 (1990) .........................................................14
*Wilkinson v. Austin,* 545 U.S. 209, 224 (2005) .....................................................14

## Statutes

42 U.S.C. § 10801, et. seq. ......................................................................................1
42 U.S.C. § 15041, et. seq. ......................................................................................1
Chapter 161, Laws of Montana 2015, effective April 1, 2015 .................................4
Mont. Code Ann. § 46-14-102 ................................................................................4

Mont. Code Ann. § 46-14-301 through 46-14-304 ...................................................4
Mont. Code Ann. § 46-14-311 ...............................................................................5
Mont. Code Ann. § 46-14-312 ............................................................................6, 9
Mont. Code Ann. § 53-21-142 ......................................................................9, 10, 11
Mont. Code Ann. § 53-21-142(b) ...........................................................................9

**<u>Rules</u>**

Fed. R. Civ. P. 10(c) ..............................................................................................7
Fed. R. Civ. P. 12(b)(6) ..........................................................................................1
Fed. R. Evid. 201(b) ...............................................................................................3

## <u>EXHIBIT LIST</u>

Exhibit "A"       DPHHS Website (http://dphhs.mt.gov/directorsoffice.aspx) Printout pertaining to Richard Opper Appointment as Director (Accessed June 3, 2015)

Exhibit "B"       DPHHS Press Release pertaining to John Glueckert Appointment as Montana State Hospital Administrator (January 8, 2010)

## INTRODUCTION

This Motion to Dismiss addresses the Second Amended Complaint ("SAC") (Doc. 67) in this civil rights action for declaratory and injunctive relief against employees of the state of Montana, filed May 8, 2015 by Disability Rights Montana, Inc. ("DRM"), a federally authorized Protection and Advocacy System.[1] Although this is not a class action and there are no individual plaintiffs, DRM alleges it meets the jurisdictional requirements for associational standing (Doc. 67, ¶¶ 2, 3) on behalf of all prisoners with mental illness who have been convicted of state crimes and have been, or may be transferred under state law after treatment at the forensic unit of the Montana State Hospital ("MSH") to finish serving their sentences at the Montana State Prison ("MSP") (Doc. 67, ¶ 1, 12). DRM does not challenge the transfer law in general, nor does it challenge transfers to the Montana Women's Prison or any other correctional facility, or from the Montana Developmental Center or any other non-correctional facility.

The SAC was originally presented as Count I of DRM's March 31, 2014, Complaint (Doc. 1), which was dismissed pursuant to Fed. R. Civ. P. 12(b)(6) by Memorandum and Order dated July 24, 2014 (Doc. 33). It was reformulated as Count I of DRM's First Amended Complaint (Doc. 42), filed October 31, 2014. Defendants' pending Motion to Dismiss Count I of the First Amended Complaint

---

[1] *See* 42 U.S.C. § 15041, et. seq., 42 U.S.C. § 10801, et. seq.

(Doc. 46) was dismissed without prejudice (Doc. 58), after the Court ordered DRM to file new complaints separating its claims against officials of the Montana Department of Public Health and Human Services ("DPHHS") from those against officials of the Department of Corrections ("DOC") (Doc. 57).

In all three versions, DRM asserts its claims against Defendants Richard Opper ("Opper"), Director of DPHHS, and John Glueckert ("Glueckert"), Superintendent of MSH, in their official capacities only (Doc. 67, ¶¶ 4, 5). DRM's premise is that Defendants have an ongoing practice of transferring prisoners serving sentences in the custody of Defendant Opper, as the director of DPHHS, from MSH to MSP without due process of law (Doc. 67, ¶¶ 1, 11, 15, 23, 24), despite the fact that state law expressly permits such transfers and DRM has not challenged the law itself.

Defendants now move to dismiss the SAC under Fed. R. Civ. P. 12(b)(6) and 8(a)(2). DRM's central legal theory, rejected by the Court in dismissing the original Complaint, has not changed. Disregarding formulaic recitations and legal conclusions, the amended allegations, taken as true, suffer from the same defects that caused the Court to dismiss the original Complaint, and do not demonstrate that DRM is entitled to relief. Under the law of the case expressed in Doc. 33, and under the applicable federal due process standard for prisoner transfers, the SAC fails to state a claim upon which relief can be granted and should be dismissed with

prejudice.

## <u>STANDARD FOR DISMISSAL</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 8(a)(2) , the SAC must be supported by factual allegations, as distinguished from naked assertions, formulaic recitations and legal conclusions, all of which the Court must disregard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The factual allegations must be sufficient, if true, to establish all of the elements of a plausible cause of action, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The allegations must not merely be "consistent with" the claimed cause of action, but plausibly exclude more likely explanations, *Id.,* at 680-681.

On a motion to dismiss,

> courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007); *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986). This includes the record in the case as well as information which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

If dismissal is granted, the Court should exercise its discretion to deny leave

3

to amend when amendment would be futile, and the pleading could not possibly be cured by the allegation of other facts, *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987) , *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980) ; *See also, Edmundson v. 0' Fallon,* 2013 U.S. Dist. LEXIS 24831, 12-13; 2013 WL 682824 (D. Mont. Feb. 22, 2013) ; *Kinlock v. Mont. Bd. of Pardons & Parole,* 2014 U.S. Dist. LEXIS 53023 (D. Mont. January 29, 2014); *Fischer Int'l Student Exchange, Inc.* 2015 U.S. Dist. LEXIS 58779 * 21 (D. Mont. May 5, 2015).

## STATUTORY FRAMEWORK

In Montana, evidence of a mental disease or disorder[2] is admissible only to establish the absence of a state of mind (*mens rea*) that is an element of the offense charged.[3] A defendant who is competent to stand trial and is acquitted on these grounds may be committed to the custody of the director of DPHHS for placement in a mental health facility[4], and is not subject to placement in a correctional facility. A defendant who claims to have had a mental disease or disorder at the time of the offense, but not severe enough to render the defendant unable to form the essential state of mind, is subject to the ordinary course of criminal procedures and may be found guilty.

---

[2] The term "mental disease or defect" was replaced throughout the code with "mental disease or disorder" by Chapter 161, Laws of Montana 2015, effective April 1, 2015.

[3] Mont. Code Ann. § 46-14-102

[4] Mont. Code Ann. § 46-14-301 through 46-14-304

Montana has a special sentencing provision for a convicted defendant who does not meet the criteria for a "not guilty" verdict based on a mental disease or disorder, if the defendant has affirmatively requested it. An affirmative claim of mental illness at the time of the offense then triggers a pre-sentencing evaluation process:

> "(1) Whenever a defendant is convicted on a verdict of guilty or a plea of guilty or nolo contendere and claims at the time of the omnibus hearing held pursuant to 46-13-110 or, if no omnibus hearing is held, at the time of any change of plea by the defendant that at the time of the commission of the offense of which convicted the defendant was suffering from a mental disease or defect or developmental disability that rendered the defendant unable to appreciate the criminality of the defendant's behavior or to conform the defendant's behavior to the requirements of law, the sentencing court shall consider any relevant evidence presented at the trial and shall also consider the results of the presentence investigation required pursuant to subsection (2).
> (2) Under the circumstances referred to in subsection (1), the sentencing court shall order a presentence investigation and a report on the investigation pursuant to 46-18-111. The investigation must include a mental evaluation by a person appointed by the director of the department of public health and human services or the director's designee. The evaluation must include an opinion as to whether the defendant suffered from a mental disease or defect or developmental disability with the effect as described in subsection (1). If the opinion concludes that the defendant did suffer from a mental disease or defect or developmental disability with the effect as described in subsection (1), the evaluation must also include a recommendation as to the care, custody, and treatment needs of the defendant."

Mont. Code Ann. § 46-14-311. Although the Montana statute does not label these defendants, some other states do, and the category is commonly referred to as "Guilty But Mentally Ill" or "GBMI."

When the sentencing court, after a mental evaluation, concurs with the defendant that the defendant meets the GBMI criteria, the defendant is sentenced to the custody of the director of DPHHS for appropriate placement throughout the term of the sentence.

> The court shall sentence the defendant to be committed to the custody of the director of the department of public health and human services to be placed, after consideration of the recommendations of the professionals providing treatment to the defendant and recommendations of the professionals who have evaluated the defendant, in an appropriate correctional facility, mental health facility, as defined in 53-21-102, residential facility, as defined in 53-20-102, or developmental disabilities facility, as defined in 53-20-202, for custody, care, and treatment for a definite period of time not to exceed the maximum term of imprisonment that could be imposed under subsection (1). The director may, after considering the recommendations of the professionals providing treatment to the defendant and recommendations of the professionals who have evaluated the defendant, subsequently transfer the defendant to another correctional, mental health, residential, or developmental disabilities facility that will better serve the defendant's custody, care, and treatment needs. The authority of the court with regard to sentencing is the same as authorized in Title 46, chapter 18, if the treatment of the individual and the protection of the public are provided for.

Mont. Code Ann. § 46-14-312.

A DPHHS sentence is only imposed at the request of the defendant, who must acknowledge and prove the existence of a qualifying mental disease or disorder. Absent this explicit request, a guilty defendant with or without a mental disease or disorder is subject to ordinary correctional sentencing.

# ARGUMENT

**1.    The legal standards to be applied to this Second Amended Complaint are the law of the case as expressed in Doc. 33.**

In dismissing the original Complaint for failure to state a claim upon which relief can be granted, the Court adopted the longstanding federal due process standard for prisoner transfers established in *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995), and *Chappell v. Mandeville*, 706 F.3d 1052 (9th Cir. 2013) (Doc. 33, pp. 6-9).

The Court's interpretation of these standards is the law of the case and not subject to relitigation on this motion.  *Hall v. City of L.A.*, 697 F.3d 1059 (9th Cir. 2011); *United States v. Smith*, 389 F.3d 944, 948-949 (9th Cir. 2004); *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452-453, (9th Cir. 2000); *Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997).

Pursuant to Federal Rule of Civil Procedure 10(c), and in the interests of judicial economy, Defendants incorporate by reference the arguments made and authorities cited in their briefs in support of their previous motions to dismiss (Docs. 18, 24, 30, 47, and 51), as supplemental to those in this brief.

**2.    The Complaint does not present a cognizable claim under the law of the case and the applicable federal due process standard for prisoner transfers.**

DRM bears the burden of establishing well-pleaded facts and a cognizable claim of deprivation of due process rights under established law, not under the law

as DRM would prefer to see it.  "[E]xpectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."  *Carver v. Lehman*, 558 F.3d 869, 875 (9th Cir. 2009) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250-51 n.12 (1983).

DRM presents dual legal theories (Doc. 67, ¶¶ 14 and 24 - 26).  First DRM claims that prisoners serving a DPHHS sentence state law have a federally protected liberty interest created by state law in remaining at MSH (Doc. 67, ¶ 14).  Alternatively, DRM claims that transfer of a prisoner from MSH to MSP in particular imposes "an atypical and significant hardship," which infringes a federally protected liberty interest protected by the fifth[5] and fourteenth amendments of the U.S. Constitution, because MSP employs fewer psychiatrists and may in the future subject DPHHS prisoners to "solitary confinement" or "behavior treatment plans" (Doc. 67, ¶¶24-26) -- regardless of the actual circumstances of the prisoner at the time of the transfer.  Neither theory is cognizable under the law of the case and the applicable federal due process standard for prisoner transfers.

### A.  Montana's prisoner transfer statute does not grant prisoners a federally-recognized liberty interest in remaining in a mental health facility for the entire duration of the sentence.

---

[5]  DRM's reference to the 5th amendment must be disregarded as it applies only to federal defendants and both Defendants are state officers. *Chavez v. Martinez*, 538 U.S. 760, 780 (U.S. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. Cal. 2001).  This brief will refer only to the fourteenth amendment.

DRM asserts that Montana Code Annotated §§ 46-14-312(2)[6] and 53-21-

142(b)[7] establish a state-created, federally recognized liberty interest in remaining

in a mental health facility for the entire duration of the sentence (Doc 67, ¶¶ 14).

This, according to DRM, invokes the full panoply of pre-transfer federal due

process rights, up to and including an evidentiary hearing with judicial review,

---

[6]  The full text of the statute follows:
  **46-14-312. Sentence to be imposed.** (1) If the court finds that the defendant at the time of the commission of the offense of which the defendant was convicted did not suffer from a mental disease or defect as described in 46-14-311, the court shall sentence the defendant as provided in Title 46, chapter 18.
    (2) If the court finds that the defendant at the time of the commission of the offense suffered from a mental disease or defect or developmental disability as described in 46-14-311, any mandatory minimum sentence prescribed by law for the offense need not apply. The court shall sentence the defendant to be committed to the custody of the director of the department of public health and human services to be placed, after consideration of the recommendations of the professionals providing treatment to the defendant and recommendations of the professionals who have evaluated the defendant, in an appropriate correctional facility, mental health facility, as defined in 53-21-102, residential facility, as defined in 53-20-102, or developmental disabilities facility, as defined in 53-20-202, for custody, care, and treatment for a definite period of time not to exceed the maximum term of imprisonment that could be imposed under subsection (1). The director may, after considering the recommendations of the professionals providing treatment to the defendant and recommendations of the professionals who have evaluated the defendant, subsequently transfer the defendant to another correctional, mental health, residential, or developmental disabilities facility that will better serve the defendant's custody, care, and treatment needs. The authority of the court with regard to sentencing is the same as authorized in Title 46, chapter 18, if the treatment of the individual and the protection of the public are provided for.
    (3) Either the director or a defendant whose sentence has been imposed under subsection (2) may petition the sentencing court for review of the sentence if the professional person certifies that:
    (a) the defendant no longer suffers from a mental disease or defect;
    (b) the defendant's mental disease or defect no longer renders the defendant unable to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law;
    (c) the defendant suffers from a mental disease or defect or developmental disability but is not a danger to the defendant or others; or
    (d) the defendant suffers from a mental disease or defect that makes the defendant a danger to the defendant or others, but:
    (i) there is no treatment available for the mental disease or defect;
    (ii) the defendant refuses to cooperate with treatment; or
    (iii) the defendant will no longer benefit from active inpatient treatment for the mental disease or defect.
    (4) The sentencing court may make any order not inconsistent with its original sentencing authority, except that the length of confinement or supervision must be equal to that of the original sentence. The professional person shall review the defendant's status each year.

[7]   The portion referred to by DRM includes the following language: 53-21-142 . Rights of persons admitted to facility. Patients admitted to a mental health facility, whether voluntarily or involuntarily, have the following rights: . . .
(2) Patients have a right to the least restrictive conditions necessary to achieve the purposes of commitment. Patients must be accorded the right to appropriate treatment and related services in a setting and under conditions that:
    (a) are the most supportive of the patient's personal liberty; and
    (b) restrict the patient's liberty only to the extent necessary and consistent with the patient's treatment need, applicable requirements of law, and judicial orders.

when the prisoner's treating and evaluating professionals recommend discharge from MSH and transfer to MSP to serve the remaining sentence. (Doc 67, ¶¶ 15, 17). Neither state statute, however, incorporates any of the procedures detailed in the SAC.

Mont. Code Ann. § 46-14-312(2) provides the director of DPHHS, in whose custody the prisoner is placed, authority to transfer a prisoner to one of four statutory options - a correctional, mental health, residential or developmental disabilities facility - after considering the custody, care and treatment needs of the prisoner and the recommendations of his own treating and evaluating professionals. This is nothing more than the long-recognized placement discretion afforded the custodian of a prisoner, which has never been recognized as a federally-protected liberty interest, *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Transfers between institutions . . . are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate.")

Mont. Code Ann. § 53-21-142 is a statement of rights of a patient during admission to a mental health facility, but includes nothing about a right to remain there against medical advice. In fact, the opposite is true. The statute specifies that:

> *This section may not:*
> *(a) obligate a professional person to administer treatment contrary*

10

*to the professional's clinical judgment*;
    (b) prevent a facility from discharging a patient for whom
appropriate treatment, consistent with the clinical judgment of a
professional person responsible for the patient's treatment, is or has
become impossible to administer because of the patient's refusal to
consent to the treatment;
    (c) require a facility to admit a person who has, on prior occasions,
repeatedly withheld consent to appropriate treatment; or
    (d) obligate a facility to treat a person admitted to the facility
solely for diagnostic evaluation.

Mont. Code Ann. § 53-21-142(17) (emphasis added).

In dismissing Count I of the original Complaint, the Court expressly rejected

DRM's state-created liberty interest theory, properly adopting instead the

longstanding federal due process standard established in *Sandin, supra* and

followed in *Chappell, supra* (Doc 33, pp. 6-9). Under this standard, which is also

the law of the case, "to find a violation of a state-created liberty interest the

hardship imposed on the prisoner must be 'atypical and significant ... in relation to

the ordinary incidents of prison life.'" *Chappell*, *supra* at 1064, quoting *Sandin*,

*supra* at 483-484. Correctional and mental health facilities are listed as equal

options under the sentencing scheme the prisoner has specifically requested, and

the transfer is in fact directly to "ordinary prison life." Being transferred after

treatment at a hospital to a prison pursuant to a professional recommendation under

the state statute is neither an atypical nor a significant hardship for a prisoner

serving a DPHHS sentence.

DRM's state law theory is actually self-defeating in a federal forum, as a

violation of state law does not invoke federal jurisdiction:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

### B. The fourteenth amendment of the U.S. Constitution does not recognize a prisoner's liberty interest in avoiding state transfer to the general population of a state prison while serving a sentence.

The basic elements of a civil rights claim based on a violation of due process are that (1) the claimant was deprived of a liberty or property interest protected by the due process clause; and (2) that the procedures used to deprive the claimant of that right were constitutionally insufficient. *Ky. Dept. of Correct. v. Thompson,* 490 U.S. 454, 460 (1989).

The federally-protected liberty interests of prisoners

> ". . . . [w]ill be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *See,* e.g., *Vitek,* 445 U.S. at 493 (transfer to a mental hospital), and *Washington,* 494 U.S. at 221-222 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin, supra* at 483-484.

In Paragraphs 24-26 of the SAC, DRM asserts that transfers from MSH to MSP in particular infringe on this federally recognized liberty interest by subjecting individuals to conditions that pose an atypical and significant hardship because the State Prison does not provide proper care to individuals suffering from serious mental illness and subjects such individuals to conditions that exacerbate their mental illness.  (Doc. 67, ¶ 24).  As detailed below, the allegations of Paragraphs 24, 25 and 26 are global and conclusory allegations about MSP's psychiatric resources and disciplinary practices.  Notably, the SAC does not allege any lack of due process at MSP at the time these practices are actually applied to DRM constituents.

Federal courts have uniformly ruled that everyday disciplinary and administrative placement decisions regarding prisoners do not offend the Fourteenth Amendment because they do not implicate a legitimate liberty interest for a prisoner already tried, convicted and serving a sentence in state custody.  Even "discipline in segregated confinement" does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Sandin,* at 486.  Classification and placement of a prisoner at a less favorable or more restrictive facility or even one far from family and friends does not constitute "an atypical and significant hardship." *Myron v. Terhune,* 476 F.3d 716, 718 (9th Cir. Cal. 2007); *Montayne v.*

*Haymes,* 427 U.S. 236 (1976); *Meachum v. Fano,* 427 U.S. 215 (1976); *Olim v. Wakinekona,* 461 U.S. 238 (1983).

The only circumstances where the courts have found a liberty interest subject to federal due process protections are where conditions to be imposed include those that are "not within the range of conditions of confinement to which a prison sentence subjects an individual", *Vitek v. Jones,* 445 U.S. 480, 493 (1980), disciplinary transfers to "supermax" for an indefinite period, *Wilkinson v. Austin,* 545 U.S. 209, 224 (2005); transfer *from* a prison *to* a mental hospital, *Vitek, supra;* and involuntary administration of psychotropic drugs within a prison, *Washington v. Harper,* 494 U.S. 210 (1990). Absent such atypical conditions of confinement, "[a]criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence." *Vitek,* at 493-494.

Well established law confirms that transfers of prisoners from hospitals to prison after treatment do not involve a federally protected liberty interest, *See Jackson v. Fair*, 846 F.2d 811 (1st Cir, 1988); *Bailey v. Gardebring*, 940 F.2d 1150 (8th Cir. 1991); *Robertson v. Virga*, 2014 U.S. Dist. LEXIS 54357 (N.D. Cal. Apr. 17, 2014); *Cruz v. Ward*, 558 F.2d 658 (2d Cir., 1977), all of which are described in Opper and Glueckert's Brief in Support of Motion to Dismiss (Doc. 18, p. 8).

In addition, in dismissing Count I of the original Complaint, the Court ruled

that

> The case as pleaded and for which relief is sought patently conflicts
> with the clear directive of *Sandin* and Ninth Circuit precedent that a
> "case by case" and "fact by fact" analysis must be undertaken to
> determine that a particular transfer, if it be a protected liberty interest,
> is shown to be violative of the "atypical and significant hardship" test.

(Doc 33, p. 9). A flat rule that all transfers to a particular prison infringes a liberty

interest because that prison happens to have the capacity to impose more restrictive

conditions at some uncertain future time, under as-yet unknown circumstances,

does not comport with the "case-by-case" and "fact by fact" requirement.

**3.     Taken as true for the purposes of this Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 8(a)(2), DRM's well-pleaded factual allegations in the SAC do not state a plausible claim to relief.**

### A. The SAC contains conclusory allegations and formulaic recitations which must be disregarded.

The SAC contains 27 paragraphs, more than half of which are legal

arguments, conclusory allegations or formulaic recitations. Under the law of the

case, and under the pleading principles of *Twombly* and *Iqbal,* the Court must

reject these statements as creditable factual allegations.

Paragraphs 1-10 are introductory and contain no allegations relevant to the

merits of the complaint. Paragraph 11 is a legal argument, a formulaic statement of

the theory that Defendants have violated the fifth and fourteenth amendments of

the U.S. Constitution. Paragraph 12 contains only a bare conclusory reference to

transfers "without due process." Paragraphs 13-14 are legal arguments about the

nature of the alleged liberty interest possessed by prisoners in the custody of the director.  Paragraph 28 is essentially a prayer for relief containing no factual allegations.

**B. The remaining allegations in the SAC are not specific enough to suggest that either defendant fails to follow the unchallenged state law transfer procedure, or participates in imposing "atypical or significant hardships" on DRM's constituents.**

Paragraph 15 of the SAC makes the conclusory allegation that Defendants have a "consistent and ongoing practice," of transferring prisoners "without procedural due process" based on a detailed list of procedures DRM alleges Defendants did *not* use when they transferred four named prisoners from MSH to MSP.  It does not allege that either of them failed to follow the procedural or substantive transfer provisions of Mont. Code Ann. § 46-14-312(2).  Paragraph 16 alleges that DPHHS transfers three prisoners a year to the department of corrections, without specifying destination facilities.

Paragraph 23 combines a conclusory statement that Defendants have an ongoing practice of denying due process, with a supporting allegation that Defendants actively oppose legislation to amend the state transfer statute to include DRM's requested procedures.  This presents no justiciable controversy, since opposing change to a lawful statute, which Defendant are not alleged to have violated, does not in any way imply unlawful conduct on their behalf.

Paragraphs 24-26 contain a long list of conclusory allegations about alleged unconstitutional practices at MSP. None of these practices is alleged to be within the control of Defendants.

Paragraph 27 contains the final, conclusory allegation that three of the four named constituents who were transferred to MSP "were *subsequently* placed in solitary confinement and on behavior management plans that are dangerous to their mental health" (emphasis added). Not only is this entirely conclusory, but acknowledges that any harm suffered was imposed by third parties and not at the hands of the only remaining Defendants in this case.

As the U.S. Supreme Court has articulated,

> "…[t]he "case or controversy" limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

The Court may take judicial notice of the original complaint in this case (Doc. 1), the First Amended Complaint (Doc. 42), the Second Amended Complaint filed against the DOC defendants (Doc. 66), and DRM's pleadings in the separate case, CV-15-22-BU-SEH, filed on the Court's instruction to sever defendants (Doc. 57). In all of these pleadings, DRM consistently alleges that the practices it alleges cause harm to its constituents occur at the hands of state officials in the Montana Department of Corrections, not these Defendants. The DOC defendants

are no longer before the Court in this case.

Paragraph 27 includes no timeframe to indicate the alleged hardships imposed on DRM's constituents occurred during either Defendant's tenure in office, and by stating that the conditions were imposed "subsequently," they acknowledge that neither Defendant had a hand in the imposition of such conditions. In addition, the Court may also take judicial notice of the original complaint (Doc 1, ¶¶ 80, 86 and 95), in which DRM claims that the three prisoners who DRM alleges were subsequently subjected to solitary confinement or behavior management plans (originally Prisoners No. 1, 2 and 3) were transferred in 2006, 2007 and 2008. The court may also take judicial notice of the attached Exhibit "A", DPHHS "Director's Office" webpage, which establishes that Richard H. Opper was appointed as Director of DPHHS in December 2012, and Exhibit "B", a DPHHS Press Release dated January 10, 2010, which establishes that John Glueckert assumed his position as Superintendent of MSH on February 1, 2010. Neither was in a position to have any involvement whatsoever with the DRM constituents whose allegedly unconstitutional transfers took place between 2006 and 2008.

In the First Amended Complaint (Doc 67, ¶¶ 147), DRM alleges that the fourth prisoner (originally Prisoner No. 9) was transferred by Defendants in 2013, a date which does coincide with both Defendants' tenure in office, but DRM does

not allege that this prisoner suffered solitary confinement, a behavior management program, or any other "atypical and significant hardship" as a result of the transfer.

Thus, under the law of the case and the applicable law of federal due process for prisoner transfers, and applying the pleading standards of *Iqbal* and *Twombly*, the specific factual allegations of the Amended Complaint, taken as true for the purpose of this Motion, do not establish that any of DRM's constituents possessed a federally protected liberty interest which the remaining Defendants could infringe by simply transferring the prisoner from MSH to MSP.

### 4. Further amendment would be futile.

DRM is a sophisticated plaintiff, represented by six experienced lawyers, and has had the benefit of the Court's clear rationale in its Order dismissing Count I of the original Complaint (Doc 33). Yet it has failed in the SAC to allege a cognizable legal theory or specific factual allegations to support its claim that Defendants have a policy or practice of deprivation of the liberty interests or due process rights of DRM's consituent prisoners. It has had two opportunities to amend its Complaint, but has still not identified a single prisoner constituent who faced "an atypical and significant hardship in relation to the ordinary incidents of prison life" at the hands of Defendants, or who enjoyed a federally protected liberty interest in continuing to receive hospital-level psychiatric care at MSH against the recommendations of his treating and

evaluating professionals, instead of being transferred to MSP to finish his sentence. It has not challenged the constitutional adequacy of the prisoner transfer procedures in Mont. Code Ann. § 46-14-312(2), and has not alleged that Defendants failed to follow those procedures.

It would be futile to permit further amendment. Therefore, the Second Amended Complaint should be dismissed with prejudice.

## CONCLUSION

The Second Amended Complaint has not cured the original Complaint's deficiencies noted the Order dismissing Count I of the Complaint as to Opper and Glueckert. (Doc. 33). The Second Amended Complaint fails to state a claim upon which relief can be granted, under the law of the case as established in the Order and the applicable federal due process standard for transfers of prisoners serving state sentences. Further amendment would be futile. Defendants Opper and Glueckert therefore respectfully request the Court to dismiss the Second Amended Complaint, with prejudice.

Date: June 4, 2015.

Francis X. Clinch

Paulette Kohman

Attorneys for Defendants Opper and Glueckert
Office of Legal Affairs
Department of Public Health and Human Services
P.O. Box 4210
Helena  MT 59604-4210
fclinch@mt.gov
pkohman@mt.gov
(406) 444-1258

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E), D. Mont. L.R. (April 7, 2014), I certify that this brief is printed with proportionally spaced Times New Roman font of 14-point size; is double-spaced, contains a word count of 5,338, excluding the caption, tables of contents and authorities, exhibit index, and certificate of compliance according to Microsoft Word 2010.

DATED this 4th day of June, 2015.

Paulette Kohman
Special Assistant Attorney General