Jeffrey A. Simmons
Matthew D. Lee
Foley & Lardner LLP
150 East Gilman Street
Madison, WI 53703-1482
Telephone: (608) 258-4267
Email: jsimmons@foley.com
         mlee@foley.com

Jon E. Ellingson
James Park Taylor
ACLU of Montana
241 E. Alder
P.O. Box 9138
Missoula, MT 59807
Telephone: (406) 549-6159
Email: jpt42@hotmail.com
         jone@aclumontana.org

Anna Conley
Attorney At Law
P.O. Box 9101
Missoula, MT 59807
Telephone: (406) 830-0367
Email: anna@annaconley.com

Kyle A. Gray
Adrian A. Miller
Holland & Hart LLP
401 N. 31st Street
Suite 1500
Billings, MT 59101-1277
Telephone: (406) 252-2166
Email: kgray@hollandandhart.com
aamiller@hollandandhart.com

*Attorneys for Plaintiff Disability Rights Montana, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA, BUTTE DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS MONTANA, INC., | ) ) ) | Civil No. CV-14-25-BU-SEH |
| Plaintiff, | ) ) | **PLAINTIFF DISABILITY** |
| vs. | ) | **RIGHTS MONTANA,** |
| | ) | **INC.'S OPPOSITION TO** |
| RICHARD OPPER, in his official | ) | **DEFENDANTS' MOTION** |
| capacity as Director of the Montana | ) | **TO DISMISS SECOND** |
| Department of Public Health and Human | ) | **AMENDED** |
| Services; JOHN GLUECKERT, in his | ) | **COMPLAINT** |
| official capacity as Administrator of the | ) | |
| Montana State Hospital, | ) | |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

I.  INTRODUCTION ...........................................................................1

II.  RELEVANT PROCEDURAL HISTORY .......................................................2

III.  THE SECOND AMENDED COMPLAINT'S ALLEGATIONS ..................3

    A.  Amended Allegations on Transfer Process ..........................................3

IV.  LEGAL STANDARD ....................................................................5

V.  THE LAW OF THE CASE DOCTRINE DOES NOT CONTROL ..............6

VI.  THE SECOND AMENDED COMPLAINT'S ALLEGATIONS
SUFFICIENTLY ADDRESS THE COURT'S CONCERNS TO
OVERCOME A FACIAL CHALLENGE TO THE PLEADINGS...............8

    A.  Conditions of Confinement ...................................................................8

    B.  Creation of a Liberty Interest ............................................................11

        1.  The Montana Statutory Scheme Satisfies the Substantive
Predicate Test for Creation of a Protected Liberty Interest ......12

        2.  The Transfers at Issue Also Satisfy the Atypical and
Significant Hardship Test for Creation of a Protected
Liberty Interest .........................................................................16

VII.  PERSONAL PARTICIPATION OF THE DEFENDANTS IS NOT
NECESSARY IN OFFICIAL CAPACITY SUITS ......................................19

VIII.  CONCLUSION...........................................................................21

CERTIFICATE OF COMPLIANCE....................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Ashcroft v Iqbal*,
 556 U.S. 662 (2009)................................................................3

*Bailey v. Gardebring*, 940 F.2d 1150 (8th Cir. 1991),…… ...................…………19

*Bell Atlantic Corp. v Twombly*,
 550 U.S. 544 (2007)................................................................3

*Burchett v. Bower*,
 355 F. Supp. 1278 (D. Ariz. 1973) ....................................................15

*Carver v. Lehman*,
 558 F.3d 869 (9th Cir. 2009) ..............................................12, 13, 16

*Chappell v. Mandeville*,
 706 F.3d 1052 (9th Cir. 2013) ........................................................12

*Cruz v. Ward*, 558 F.2d 658 (2d Cir. 1977)…..................... …………………………19

*Hausken v. Lewis*,
 2013 U.S. Dist. LEXIS 130816,
 (W.D. Wash. Sept. 12, 2013)...........................................................20

*Incumaa v. Stirling*, No. 11-6411, 2015 U.S. App. LEXIS 11321 (4th
 Cir., July 1, 2015)…. ................................................................17

*Jackson v. Fair*, 846 F.2d 811 (1st Cir. 1988)........................................19

*Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1098 (W.D. Wis. 2001)......................18

*Kamakana v. City & Cnty. of Honolulu*,
 447 F.3d 1172 (9th Cir. 2006) .........................................................7

*Kentucky v. Graham*,
 473 U.S. 159 (1985)...................................................................20

*McQuillon v. Duncan*,
306 F.3d 895 (9th Cir. 2002) .................................................................12, 13, 16

*Parsons v. Ryan*, 754 F.3d 657, 663 (9th Cir. 2014) ............................……17

*Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011) .......................................................................................................…..6

*Randall v. Scott*,
610 F.3d 701 (11th Cir. 2010) ...........................................................11

*Robertson v. Virga*, Case No. 13-cv-5868, 2014 U.S. Dist. LEXIS 54357 (N.D. Cal. April 17, 2014).......................................................……19

*Sandin v. Conner*,
515 U.S. 472 (1995)...............................................................12, 16, 17

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) .........................................................................................................…..6

*Smith v. Sumner*,
994 F.2d 1404 (9th Cir. 1993) .......................................................12

*Snoeck v. Brussa*,
153 F.3d 984 (9th Cir. 1998) .......................................................21

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ...........................................................6

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) ...........................................................7

*United States v. Houser*,
804 F.2d 565 (9th Cir. 1986) ...........................................................8

*United States v. Smith*,
389 F.3d 944 (9th Cir. 2004) ...........................................................6

*Vitek v. Jones*,
445 U.S. 480 (1980).........................................................................15

*Woods v. Carey*,
No. CIV S-04-1225 LKK GGH P, 2006 U.S. Dist. LEXIS 8575
(E.D. Cal. Mar. 6, 2006) .......................................................................................21

**Statutes**

Mont. Code Ann. § 46-14-312 ...........................................................................*passim*

Mont. Code Ann. § 53-21-102 ...............................................................................19

Mont. Code Ann. § 53-21-142 ...........................................................................*passim*

# I.    INTRODUCTION

Defendants Richard Opper and John Glueckert's (collectively "Defendants") Motion to Dismiss the Second Amended Complaint of plaintiff Disability Rights Montana, Inc. ("DRM") should be denied for the following reasons:

First, Defendants have ignored new facts that DRM included in the Second Amended Complaint ("SAC") pertaining to prisoners' transfers from the Montana State Hospital ("Hospital") to the Montana State Prison ("Prison"). DRM added these facts to specifically address the Court's previous bases for dismissing DRM's original Complaint. These facts, obtained from prisoners sentenced "Guilty But Mentally Ill" ("GBMI"), allege the prisoners were transferred without notice or opportunity to be heard, and without due consideration of their custody, care, or treatment needs. One of the prisoners, Justin Bear, was transferred in 2013 while the Defendants held their current positions at the Montana Department of Public Health and Human Services ("DPHHS"). (*See* SAC ¶ 17.)

Second, DRM has adequately alleged the existence of liberty interests protected by the Due Process Clause that Defendants violated when individuals sentenced GBMI were transferred without adequate process. Under Mont. Code Ann. § 46-14-312, individuals sentenced GBMI and placed in the Hospital have a liberty interest in remaining at the Hospital unless another facility will "better serve" their "custody, care and treatment needs." Montana Code Ann. § 53-21-

142(2) creates a related liberty interest in being housed in "the least restrictive conditions necessary to achieve the purpose of commitment" at the Hospital. These liberty interests exist under both the "atypical and significant hardship test" upon which Defendants continue to rely, as well as the "substantive predicate test" that the Ninth Circuit applies to cases not involving internal prison regulations.

Third, Defendants' "personal participation" argument continues to misstate the law and the facts. Defendants are properly named in their official capacities given their positions at DPHHS and, moreover, DRM has alleged that these acts are ongoing and have occurred while the Defendants held their current positions. The law is clear that the Defendants are the appropriate officials to provide the injunctive relief requested in the Amended Complaint.

Accordingly, Defendants' Motion to Dismiss the Second Amended Complaint should be denied.

DRM, like the Defendants, incorporates by reference its oppositions to Defendants' previous motions to dismiss (Dkt. Nos. 21, 50), as well as DRM's previous Sur-Reply (Dkt. No. 31).

## II.    <u>RELEVANT PROCEDURAL HISTORY</u>

On July 24, 2014, this Court granted the Defendants' motion to dismiss DRM's claim against them that was contained in DRM's original complaint.  (Dkt. No. 33 ("Order").)  The Order focused on the sufficiency of the pleadings when

evaluated under the standards in *Bell Atlantic Corp. v Twombly*, 550 U.S. 544

(2007), and *Ashcroft v Iqbal*, 556 U.S. 662 (2009). This Court was primarily

focused on the factual specificity of the Complaint's allegations. (*See* Order at 8.)

The Court also expressed concern that the allegations against the Defendants

predated their appointments to their current positions at DPHHS. (*See id.*)

> Importantly, the Order concluded as follows:

> [T]he Court has made no ruling on a question which is not
> decided, namely, whether a particular prisoner determined
> GBMI, and committed to the custody of the Director of DPHHS
> may, in an appropriate case, claim a Fourteenth Amendment
> due process protected liberty interest in procedures carried out
> in effecting transfer from the State Hospital to the Montana
> State Prison. (*Id.* at 10.)

In response to the Order, DRM gathered additional facts and filed its Amended

Complaint on October 31, 2014, and specifically addressed the concerns

articulated by the Court. (*See* Dkt. No. 42.) The Court subsequently ordered DRM

to file amended complaints that separately addressed the allegations against the

defendants associated with DPHHS and those associated with the Department of

Corrections. (*See* Dkt. No. 57.) As a result, DRM filed the Second Amended

Complaint (Dkt. No. 67) that is at issue here.

## III.   THE SECOND AMENDED COMPLAINT'S ALLEGATIONS

### A.   Amended Allegations on Transfer Process

The SAC adds allegations regarding the transfer of GBMI prisoners.

Paragraph 15 of the SAC alleges that DRM is aware of at least four instances in

which the Defendants transferred GBMI individuals from the Hospital to the Prison without any of the following procedural safeguards:

- reasonable notice that DPHHS was beginning the process that resulted in the individual's transfer to the Prison;

- reasonable notice of the time and place of the meeting of the Forensic Review Board ("FRB") at which time the individual's possible transfer would be considered;

- a list of the witnesses and documents that would be presented in support of the request to transfer;

- the assistance of legal counsel in presenting the individual's case to the FRB;

- the opportunity at, and/or before, the meeting of the FRB:

  o to confront and cross examine the witnesses who were heard by the FRB;

  o to examine the documents that the FRB relied upon in reaching its recommendation and present testimony regarding the documents to present his own testimony in person; and to present his own witnesses and documents on the subject, including without limitation treating psychologists and physicians;

- an independent decision-maker making transfer determinations;

- an independent evaluation by a qualified mental health professional regarding whether a transfer to the Prison would better serve the individual's custody, care, and treatment needs;

- a written statement by the decision-maker setting forth the basis for the transfer determination and the evidence relied upon in reaching that determination;

- timely notice of the recommendation of the FRB to the Director;

- the opportunity to contest the recommendation before the Director;

- notice that the Director had adopted the recommendations of the FRB; and

- the opportunity to appeal the decision to the Director of DPHHS.

DRM's SAC specifically identifies the four prisoners who DRM knows were subjected to being transferred to the Prison without any procedural due process. (*See* SAC ¶ 18.) In all four instances, the prisoners did not learn of the decision to transfer them to the Prison until the day the transfer occurred. (*Id.* ¶ 17.) One of those transfers occurred in 2013, while both of the Defendants held their current positions at DPHHS. (*Id.* ¶ 17; *see also* Defs' Br. at 18.)

## IV.  <u>LEGAL STANDARD</u>

The Supreme Court's decisions in *Iqbal* and *Twombly* did not do away with the rule of notice pleading in federal court. "[U]nder the federal rules a complaint

is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff is not required to "demonstrate" the truth of its allegations. *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011). Nor is a complaint required to "contain detailed factual allegations.'" *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (plaintiff's two and one- half page complaint stated a claim for age discrimination where it alleged merely that plaintiff was at least 40 years old, her job performance was satisfactory, she received good performance reviews, she was discharged, and younger comparators kept their jobs).

## V.    THE LAW OF THE CASE DOCTRINE DOES NOT CONTROL

As an initial matter, the "law of the case" doctrine does not control Defendants' Motion. Defendants argue the law of the case requires the Court to dismiss them from the lawsuit. In advancing this position, Defendants misconstrue the Court's previous Order and misinterpret the allegations in the Second Amended Complaint.

The law of the case doctrine is not "an inexorable command . . . nor is it a limit to [a court's] power." *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (internal quotations and citations omitted). Rather, its application is

discretionary, and a trial judge has broad discretion to reconsider pre-trial rulings. *See id.*; *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1186 (9th Cir. 2006) ("[T]here is no imperative duty to follow the earlier . . . ruling--only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs." (quoting *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996)).

Here, the Court's Order specifically stated the Court "*made no ruling on a question which is not decided*, namely, whether a particular prisoner determined GBMI, and committed to the custody of the Director of DPHHS may, in an appropriate case, claim a Fourteenth Amendment due process protected liberty interest in procedures carried out in effecting transfer from the State Hospital to the Montana State Prison." (*See* Order (Dkt. No. 33) at 10 (emphasis added).) Because the Court did not address certain legal questions, the law of the case doctrine as to those questions cannot apply. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (under "law of the case" doctrine, "a court is generally precluded from reconsidering an issue *that has already been decided* by the same court, or a higher court in the identical case") (emphasis added).

Moreover, the SAC contains new factual allegations. Because the Court's Order acknowledged that it could be possible to allege a liberty interest with an appropriate plaintiff and defendant, the law of the case doctrine does not apply.

In any event, a district court can reconsider its interlocutory orders during the litigation's pendency.  *See United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) ("law of the case" doctrine is discretionary).  Because this case is still at the pleading stage, and DRM has provided new factual allegations in the SAC, this Court is not bound by the law of the case doctrine, because the SAC constitutes a new round of pleadings subject to review anew by this Court.

## VI.  THE SECOND AMENDED COMPLAINT'S ALLEGATIONS SUFFICIENTLY ADDRESS THE COURT'S CONCERNS TO OVERCOME A FACIAL CHALLENGE TO THE PLEADINGS

The SAC addresses the deficiencies identified by the Court in its Order by providing factual allegations about specific prisoners demonstrating a concrete liberty interest and a complete lack of due process in depriving the prisoners of that liberty interest.  The allegations are neither "labels and conclusions" nor "formulaic recitations" nor "naked assertions."  (*See* Order at 6.)  These allegations, taken as true, demonstrate due process violations in the deprivation of a protected liberty interest when DPHHS – at the direction of Defendants Opper and Glueckert – transfers GBMI prisoners from the Hospital to the Prison.

### A.  Conditions of Confinement

The SAC alleges GBMI prisoners are removed from an environment where the ordinary incidents of confinement include treatment and therapy for mental illness and are placed into an environment where virtually no treatment takes place.

While at the Hospital, they are housed in "the least restrictive conditions necessary to achieve the purpose of commitment" as required by Mont. Code Ann. § 53-21-142(2). The Hospital has at least seven full-time psychiatrists available at all times for a population of approximately 209 patients, resulting in a psychiatrist-patient ratio of approximately 1 to 28. (SAC ¶ 25.) Every GBMI patient is assigned a treatment team, including a psychiatrist or advance practice psychiatric nurse, a social worker and a nurse, and in some cases, a treatment specialist and a recreation therapist. (*Id.*) Moreover, the Prison engages in the following practices that adversely affect GBMI prisoners:

- placing prisoners with serious mental illness in various forms of solitary confinement for 22 to 24 hours per day for months and years at a time;

- placing prisoners with serious mental illness on behavior management plans that involve solitary confinement and extreme restrictions of privileges;

- having no standards for determining whether placing a prisoner with serious mental illness in solitary confinement or on a behavior management plan will be harmful to the prisoner's mental health;

- engaging in a pattern of refusing to properly diagnose prisoners as suffering from serious mental illness;

- engaging in a pattern of refusing to provide prisoners with medications for serious mental illness;

- failing to have a system in place to review and evaluate the diagnosing and prescribing practices of its mental health staff;

- failing to have a system to classify prisoners according to their mental health needs;

- failing to adequately consider prisoners' serious mental illnesses when making decisions about prisoners' housing and custody levels; and

- having no system in place for auditing, evaluating or ensuring the effectiveness of its mental health care program in treating prisoners with serious mental illness.

(*See* SAC ¶ 26.)  After their transfer to the Prison, three of the four prisoners identified in the SAC were placed in solitary confinement and on behavior modification plans that are dangerous to their mental health.  (*Id.* ¶ 27.)

DRM's first amended complaint (Dkt. No. 42) and its second amended complaint against defendants associated with the Montana Department of Corrections (Dkt. No. 66), which were filed in this action, contain additional allegations regarding the harmful conditions to which prisoners with serious mental illness are subjected at the Prison, and DRM requests that the Court take judicial notice of those allegations, given that DRM originally pled the claims and

factual allegations against both sets of defendants as part of one comprehensive action. For example, James Larson (Prisoner No. 1 in the first amended complaint), diagnosed with schizophrenia, was punished with placement in solitary confinement and "behavior management plans," and his antipsychotic medicine was discontinued. (*See* Dkt. 42, ¶¶ 83-84.) "Treatment" for James Patrick (Prisoner No. 2 in the first amended complaint) included over three years in solitary confinement and discontinuation of his antipsychotic medication. (*See id.*, ¶¶ 93, 95.) "Treatment" for Shaun Morrison (Prisoner No. 3 in the first amended complaint) included discontinuation of needed medications and placement in solitary confinement. The longer he spent in solitary confinement, the worse his symptoms became. (*See id.*, ¶¶ 107-08.) Despite being diagnosed at the Hospital as suffering from paranoid schizophrenia and being treated with Seroquel, after transfer to the Prison the staff psychiatrist took Mr. Morrison off his medications and told him that he was "not sick." (*Id.*, ¶¶ 146, 151.)

## B.  Creation of a Liberty Interest

The conditions of confinement discussed above demonstrate that prisoners transferred to the Prison do not receive the care required to treat their mental illness. The liberty interest at stake—the right to remain at the Hospital for appropriate medical treatment—can be established under both the "substantive predicate" test, which applies in this case, and the "atypical and significant

hardship" approach, which under Ninth Circuit law applies to cases involving internal prison regulations.

The Ninth Circuit has held that the "substantive predicate test" applies when considering whether a statutory scheme of regulation – such as Mont. Code Ann. § 46-14-312 – creates a liberty interest. *See McQuillon v. Duncan*, 306 F.3d 895 (9th Cir. 2002). Under that test, courts examine "whether the state has placed substantive limitations on official discretion" by using "explicitly mandatory" language in the governing statute. *See Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013); *see also Carver v. Lehman*, 558 F.3d 869, 872-73 (9th Cir. 2009).

The "atypical and significant hardship" test articulated in *Sandin v. Conner*, 515 U.S. 472 (1995), by contrast, applies only where the claimed interest arises from internal prison regulations. *See McQuillon*, 306 F.3d at 903; *Carver*, 558 F.3d at 873 n.5.

### 1.  The Montana Statutory Scheme Satisfies the Substantive Predicate Test for Creation of a Protected Liberty Interest

Under the substantive predicate test, a state creates a liberty interest protected by due process by "establishing substantive predicates to govern official decision-making" and "using explicitly mandatory language, *i.e.*, specific directives to the decision maker that if the regulation's substantive predicates are present, a particular outcome must follow." *See Smith v. Sumner*, 994 F.2d 1404,

1406 (9th Cir. 1993) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989)).

Here, Mont. Code Ann. § 46-14-312(2) and § 53-21-142 are statutes applicable to the commitment and treatment of individuals sentenced Guilty But Mentally Ill. Section 46-14-312 requires such individuals to be sentenced to the custody of the Department of Public Health and Human Services, not the Department of Corrections. Section 53-21-142 governs the treatment of individuals committed to the Hospital and grants such individuals a broad range of rights not typically granted to prisoners, including the right to "the least restrictive conditions necessary to achieve the purposes of the commitment." Neither statute has anything to do with "internal prison regulations," as is necessary to trigger the application of the "atypical and significant hardship" test. Indeed, the very purpose of § 46-14-312(2) is to provide alternatives to the normal prison regulatory scheme given an individual's serious mental illness. As a result, the substantive predicate test of *McQuillon* applies, not the atypical and significant hardship test of *Sandin*. *See McQuillon*, 306 F.3d at 903; *Carver*, 558 F.3d at 873 n.5.

Under the statutes, once a court assigns a prisoner to DPHHS, the DPHHS Director must place the prisoner in an appropriate facility for treatment of his or her mental illness. *See* Mont. Code Ann. § 46-14-312(2). When in a mental health

facility,[1] treatment for mental illness includes the least restrictive conditions necessary to achieve the purposes of confinement. *See* Mont. Code Ann. § 53-21-142(2). Prisoners in a mental health facility have a right to privacy and dignity, have a right to an environment supportive of personal liberty, and have a right to be free from restriction only to the extent necessary and consistent with the prisoner's treatment need, applicable law, or judicial orders. *See id.*

Moreover, GBMI individuals sentenced to DPHHS's custody are not initially sentenced to the Department of Corrections specifically because the established mental illness warrants a more therapeutic setting. Transfer to the Prison, therefore, is <u>not</u> a transfer within the Department of Corrections or within the Prison generally, but a transfer from one state agency (DPHHS) to another (Department of Corrections).

Section 46-14-312(2) places a substantive limitation on the DPHHS Director's authority to transfer a GBMI individual from the Hospital to the Prison. The statute permits the Director to approve such a transfer only if the State Prison will "better serve the defendant's custody, care and treatment needs." *See id.* This is precisely the type of limitation upon the Director's discretion that creates a liberty interest requiring due process protection under the substantive predicate test. The statute mandates that a transfer of a GBMI prisoner will "better serve"

---

[1] "Mental health facility" includes the Hospital. *See* Mont. Code Ann. § 53-21-102(10).

the prisoner's treatment needs; the statute does not contemplate a transfer that will "worse serve" the prisoner's mental health treatment. *See Vitek v. Jones*, 445 U.S. 480, 489-90 (1980) (finding a state statutory scheme created a liberty interest when the statute permitted transfer of a prisoner from the state prison to the state hospital only upon a finding of mental illness or defect); *see also Burchett v. Bower*, 355 F. Supp. 1278, 1281 (D. Ariz. 1973) ("[T]he right to mental treatment at the Hospital is a fundamental public benefit in which a patient has a substantial individual interest. It thus falls within the categories of rights requiring a hearing before the benefit is terminated and the patient is returned to the Prison or transferred elsewhere.").

Therefore, the statutory scheme the Montana Legislature has enacted satisfies the substantive predicate test to create a liberty interest protected by the Due Process Clause. Not only are GBMI prisoners required to be remanded to the custody of the DPHHS Director, but the Director must then assign an appropriate treatment facility, including a mental health institution. *See* Mont. Code Ann. § 46-14-312(2). While at the mental health institution, GBMI individuals are entitled to treatment and certain statutory rights consistent with that treatment. *See* Mont. Code Ann. § 53-21-142(2).

Because the Director cannot transfer a patient from one facility to another unless the transfer will "better serve" the patient's needs, the Montana Legislature

has imposed a substantive predicate on official decision-making: the transfer to another facility must be informed and supported by evidence that the transfer will better serve mental illness treatment. As a result, a GBMI individual is entitled to notice and an opportunity to be heard, which would include the ability to contest evidence in support of transfer, to confront witnesses, and to present evidence and witness of his or her own, including other treating physicians or psychiatrists. *See Vitek*, 445 U.S. at 494-95.

Therefore, this Court should deny Defendants' Motion To Dismiss because the Second Amended Complaint sufficiently alleges the existence of a protected liberty interested created by Montana statute and Defendants' violation of that statutory scheme by not providing adequate (or any) due process.

**2.      The Transfers at Issue Also Satisfy the Atypical and Significant Hardship Test for Creation of a Protected Liberty Interest**

The Defendants urge that instead of evaluating the liberty interest under the substantive predicate test, the interest should be evaluated under the atypical and significant hardship test from *Sandin*. As discussed above, the Ninth Circuit has rejected this approach, limiting *Sandin* to internal prison regulations. *See McQuillon*, 306 F.3d at 903; *Carver*, 558 F.3d at 873 n.5. But even if the Court did apply *Sandin*, the result would be the same.

The atypical and significant hardship test requires the Court to compare the baseline conditions of confinement of the prisoner at issue to the new conditions to which he is being subjected. *See Incumaa v. Stirling*, No. 11-6411, 2015 U.S. App. LEXIS 11321, *22-23 (4th Cir., July 1, 2015); *see also Sandin*, 515 U.S. at 486 ("Based on a comparison between inmates inside and outside disciplinary segregation, the State's action in placing him there for 30 days did not work a major disruption to his environment."). If the new conditions of confinement impose an atypical and significant hardship upon the prisoner, then the prisoner is entitled to due process protections before the transfer is made. The critical inquiry is whether the transfer "work[s] a major disruption to [the prisoner's] environment." *Id.*

As discussed above and alleged in the SAC, transferring GBMI individuals from the Hospital to the Prison imposes atypical and significant hardships upon them. The Prison is not equipped to handle the number of mentally ill prisoners, as demonstrated by, among other things, the ratio of staff psychiatrists to mentally ill prisoners. (SAC ¶ 25.) Once transferred to the Prison, the individuals are subjected to solitary confinement, behavior management plans, and numerous other practices that exacerbate their mental illnesses (*id.* ¶¶ 24-27), conditions that courts have repeatedly recognized as being dangerous to prisoners with mental illness. *See*, *e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 663 (9th Cir. 2014) (certifying

class where plaintiffs claimed that prison officials' practice of housing prisoners in extreme isolation leads to "psychiatric deterioration, self-injury, and death"); *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1098 (W.D. Wis. 2001) ("Most inmates have a difficult time handling these conditions of extreme social isolation and sensory deprivation, but for seriously mentally ill inmates, the conditions can be devastating.").

The dramatic difference between the conditions of life for GBMI individuals housed at the Hospital, as compared to the conditions GBMI individuals are subjected to at the Prison, shows that a transfer to the State Prison imposes an atypical and significant hardship on those individuals.  Indeed, the State of Montana has mandated that individuals sentenced Guilty But Mentally Ill must be evaluated by DPHHS in a manner that recognizes the unique needs associated with those individuals' mental illnesses.  As a result, DPHHS cannot deprive those individuals of their right to remain at the State Hospital to receive appropriate treatment without providing them the basic elements of due process of law.

Here, the facts alleged show that DPHHS does not provide GBMI individuals with that due process.  The individuals do not receive notice of a hearing, because they are provided with no hearing at all.  The individuals are not informed that they are being considered for transfer to the Prison.  They are not informed of the evidence and witnesses, if any, used to make transfer decisions.

They are not given the opportunity to attend any such hearing (if one exists), and as a result are not allowed to contest evidence or present evidence of their own. Nor are GBMI individuals provided with any right of appeal. As shown in the SAC, the "process" provided to these individuals consists of guards showing up without notice on the day of transfer and immediately transporting them to the Prison. (*See id.* ¶ 17.)

As a result, the Amended Complaint sufficiently alleges that the Defendants have denied the identified GBMI prisoners with procedural due process in violation of the U.S. Constitution.[2]

## VII. PERSONAL PARTICIPATION OF THE DEFENDANTS IS NOT NECESSARY IN OFFICIAL CAPACITY SUITS

DRM has alleged that Defendants Opper and Glueckert personally participated in one of the unconstitutional transfers, which occurred in 2013. (*See* SAC ¶¶ 4-5, 17.) Moreover, DRM has specifically alleged that the Defendants'

---

[2] The cases that Defendants cite for the proposition "that transfers of prisoners from hospitals to prison after treatment do not involve a federally protected liberty interest" (Defs' Br. at 14), do not support their position. In *Jackson v. Fair*, 846 F.2d 811 (1st Cir. 1988), the court found that no liberty interest existed because the mental health commitment statute at issue there – unlike MCA § 46-14-312 – had no "procedures which seemed designed to give patients a 'right' to stay in psychiatric institutions." 846 F.2d at 816. The courts in *Bailey v. Gardebring*, 940 F.2d 1150 (8th Cir. 1991), *Robertson v. Virga*, Case No. 13-cv-5868, 2014 U.S. Dist. LEXIS 54357 (N.D. Cal. April 17, 2014), and *Cruz v. Ward*, 558 F.2d 658 (2d Cir. 1977), all failed to apply either the "substantive predicate" or "atypical and significant hardship" tests in their conclusory rulings. *See Bailey* at 1157; *Robertson* at *3; *Cruz* at 662.

unconstitutional practices are ongoing.[3]  (*See id.* ¶ 23.)  Nevertheless, it is important to point out that personal participation is not necessary in a suit, such as this one, seeking only injunctive relief against government actors in their official capacity.

"When a plaintiff . . . seeks injunctive or prospective relief, the standard for determining if the proper defendant has been sued in his or her official capacity is not the personal participation standard . . . ."  *Hausken v. Lewis*, No. C12-5882 BHS-JRC, 2013 U.S. Dist. LEXIS 130816, at *11-12, 2013 WL 5176913, at *4 (W.D. Wash. Sept. 12, 2013).  The Supreme Court has explained that "[p]ersonal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law. . . .  Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal citations omitted).  Accordingly, "it is not necessary to allege the personal involvement of a state official when plaintiffs are attacking a state procedure on federal grounds that relate in some way to the job duties of the named defendant. All that is required is that the complaint name an official who could appropriately

---

[3] The Defendants allege that any harm that is inflicted upon GBMI individuals "occurs at the hand of state officials in the Montana Department of Correction, not these Defendants."  (Defs' Br. at 17.)  That is incorrect.  GBMI individuals are sentenced to the custody of the DPHHS Director, Defendant Opper, and remain in his legal custody regardless of where the individual is placed.  *See* Mont. Code Ann. § 46-14-312(2).

respond to a court order on injunctive relief should one ever be issued." *Woods v. Carey*, No. CIV S-04-1225 LKK GGH P, 2006 U.S. Dist. LEXIS 8575, at *16 (E.D. Cal. Mar. 6, 2006), *adopted at* 2006 U.S. Dist. LEXIS 70719 (E.D. Cal. Sept. 28, 2006); *see also Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (Proper official defendants for alleged constitutional violations must merely "have some connection with the enforcement of the act.").

Thus, DRM's claims against Defendants Opper and Glueckert are appropriate as to all of the GBMI prisoners identified in the SAC, not just the prisoner who was transferred in 2013, and if Opper and Glueckert leave their positions, the claims will continue to be proper against their successors.

## VIII. <u>CONCLUSION</u>

For all of the foregoing reasons, DRM respectfully requests that this Court deny Defendants' Motion To Dismiss the Plaintiffs' Second Amended Complaint.

Dated: July 3, 2015

*s/Jeffrey A. Simmons*
Jeffrey A. Simmons (*Pro Hac Vice*)
Matthew D. Lee (*Pro Hac Vice*)
Foley & Lardner LLP
150 East Gilman Street
Madison, WI 53703-1482
Telephone: (608) 258-4267
Email: jsimmons@foley.com


*s/Jon E. Ellingson*
Jon E. Ellingson
James Park Taylor

ACLU of Montana
241 E. Alder
Missoula, MT 59807
Telephone: (406) 549-6159
Email: jpt42@hotmail.com
jonelling@gmail.com

Anna Conley
Attorney At Law
P.O. Box 9101
Missoula, MT 59807
Telephone: (406) 830-0367
Email: anna@annaconley.com


Kyle A. Gray
Adrian A. Miller
Holland & Hart LLP
401 N. 31st Street, Suite 1500
Billings, MT 59101-1277
Telephone: (406) 252-2166
Email: kgray@hollandandhart.com
aamiller@hollandhart.com

*Attorneys for Plaintiff Disability
Rights Montana, Inc.*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Rule 7.1(d)(2), D. Mont. L.R. (April 7, 2014), I certify that this brief is printed with proportionally spaced Times New Roman font of 14-point size; is double-spaced, and the brief contains 4,734 words according to Microsoft Word.

Dated this <u>3rd</u> day of July, 2015.

*/s/ Jeffrey A. Simmons*
Jeffrey A. Simmons
