Francis X. Clinch
Paulette Kohman
Special Assistant Attorneys General
Office of Legal Affairs
Department of Public Health and Human Services
P.O. Box 4210
Helena, MT 59604-4210
Tel: (406) 444-1258
Fax: (406)444-9744
fclinch@mt.gov
pkohman@mt.gov

Attorneys for Defendants Opper and Glueckert

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MONTANA, INC., Plaintiff, on behalf of all persons sentenced to the custody of the Montana Department of Public Health and Human Services as Guilty But Mentally Ill and who have been or may be transferred from the Montana State Hospital to the Montana State Prison, <br><br> v. <br><br> RICHARD OPPER, in his official capacity as Director of the Montana Department of Public Health and Human Services; and JOHN GLUECKERT, in his official capacity as Administrator of the Montana State Hospital; <br><br> Defendants. | Civil Action No. CV-14-25-BU-SEH <br><br> **DEFENDANTS' REPLY BRIEF ON MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## I.	Introduction

This Brief replies to Disability Rights Montana (DRM)'s Opposition (Doc.

76) to Defendants' motion (Doc. 71) to dismiss DRM's Second Amended

Complaint (SAC) (Doc. 67) and Defendants' brief in support of their motion (Doc.

72).  The SAC seeks injunctive and declaratory relief under 42 U.S.C. § 1983

based on Defendant's implementation of Mont. Code Ann. § 46-14-312(2)

("transfer statute"), which authorizes the Director of the Department of Public

Health and Human Services (DPHHS) to transfer prisoners serving sentences in the

custody of the Director (DPHHS prisoners) to a correctional or other facility.

DRM's Opposition focuses on three faulty arguments.

First, DRM emphasizes the "new allegations" of the SAC (as compared with

those in the dismissed Count 1 of its original complaint (Doc. 1)), with respect to

the newly-named constituents upon whom it bases both its associational standing

and its claim for injunctive and declaratory relief.  The "new allegations" are

entirely related to the process for transferring DPHHS prisoners from Montana

State Hospital (MSH) to Montana State Prison (MSP).  Additional process

allegations cannot save the SAC, however, since it fails to allege sufficient facts to

establish that transferring a DPHHS prisoner from MSH to the general population

at MSP, on the recommendation of the psychiatric professionals who know him

best, infringes on a federally protected liberty interest.

Second, when DRM does turn to the merits of the liberty interest it
has claimed for its prisoner constituents, DRM argues the same faulty
legal theory that the Court has already found to
patently conflict with the clear directive of Sandin and Ninth Circuit
precedent that a "case by case" and "fact by fact" analysis must be
undertaken to determine that a particular transfer, if it be a protected
liberty interest, is shown to be violative of the "atypical and
significant hardship" test.

Doc. 33, p. 9 (referring to the standards established in *Chappell v. Mandeville*, 706

F.3d 1052, 1054 (9th Cir. 2013), and *Sandin v. Conner*, 515 U.S. 472, 483-84

(1995)).  DRM simply repeats its argument that the Court should reinstate the

"substantive predicate" test repudiated in *Sandin* for the current "atypical and

significant hardship" test (Doc. 76, pp. 11-15).  In so doing, DRM makes the

specious argument that the "atypical and significant hardship" standard only

applies to prison regulations, while all state statutes must be evaluated under the

"substantive predicate" test (Doc. 76, pp. 13, 16).

Third, as grounds for its thesis that Defendants infringe on a prisoner's

federally protected liberty rights, DRM re-emphasizes its inflammatory,

conclusory allegations about "subsequently" imposed conditions at MSP, without

linking Defendants' alleged transfer procedures to these conditions.  The SAC, like

the original complaint, contains no allegations that Defendants have ever

transferred a DPHHS prisoner from MSH to a setting at MSP which constitutes an

"atypical or significant hardship in relation to the ordinary incidents of prison life,"

or that any DRM prisoner constituent presently at MSH faces such a transfer.

DRM implies that because the "personal involvement" necessary for damages under 42 U.S.C. § 1983 does not apply to this action for injunctive and declaratory relief, it need not allege a causative link between Defendants' implementation of Montana's prisoner transfer statute and any subsequent deprivation of a prisoner's liberty. This is incorrect.

The SAC, which supersedes all prior versions of DRM's claims, fails to state a claim upon which relief can be granted under the law of the case, the law of the United States Court of Appeals for the 9th Circuit and the United States with regard to prisoner transfers, or even under the discredited "substantive predicate" standard advocated by DRM.

**II.** **The SAC fails to state a claim that male prisoners in the DPHHS Director's custody have a federally protected liberty interest infringed by transfer from MSH to the general population at MSP.**

A.     The Court may not use judicial notice to augment the SAC with allegations that have been voluntarily abandoned.

DRM requests the Court take judicial notice of allegations in its prior complaints (Docs. 1 and 42), as well as allegations in a separate complaint filed in this case against different defendants (Doc. 66) after the Court ordered DRM to sever the DPHHS and Montana Department of Corrections (DOC) defendants (Doc. 76, pp. 10-11).  While the Court may take judicial notice of previous complaints filed in this matter pursuant to Fed. R. Evid. 201, such notice would only confirm that those allegations have been voluntarily dropped from the SAC

4

against these Defendants.  With limited exceptions not relevant to this case, (*See*,

*e.g.*, *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. Ariz. 2012), matters in

an original complaint which are not alleged in an amended complaint are waived.

*London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981), *King v. Atiyeh*,

814 F.2d 565, 567 (9th Cir. Or. 1987).  The SAC is the only remaining pleading

involving Defendants Opper and Glueckert.  It must stand or fall on its own; the

Court may not augment the SAC with pleadings which DRM has abandoned.

B.      Allegations of procedural deficiency do not state a claim for relief in
        the absence of an identifiable liberty interest to which due process
        protections apply.

DRM's Opposition begins by repeating, word for word, the allegations in the

SAC describing alleged missing elements in Defendants' transfers of male

prisoners to MSP under Montana's transfer statute (Doc. 76, pp. 3-5).  Defendants'

Motion to Dismiss is focused on the failure of the SAC to allege sufficient facts

under a cognizable legal theory to show that these prisoners have a federally

protected liberty interest in remaining at MSH and avoiding prison for the duration

of their sentences.  Without infringement of a federally protected liberty interest,

there can be no federal due process violation, and the Court can grant no relief

under § 1983.  "Process is not an end in itself.  Its constitutional purpose is to

protect a substantive interest to which the individual has a legitimate claim of

entitlement."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

C.   DRM's "substantive predicate" theory conflicts with the law of the case and the law of the 9th Circuit and the United States, and even if adopted by this Court, would not support recognizing a federally protected liberty interest arising from Montana's prisoner transfer statute.

DRM argues (Doc. 76, pp. 12-16) that the Court should abandon the "case by case" and "atypical and significant hardship" standards that it adopted in its Order dismissing DRM's original complaint (Doc. 33, pp. 6-8). DRM urges reconsideration of the law of the case because:

> the Court "*made no ruling on a question which is not decided*, namely, whether a particular prisoner determined GBMI, and committed to the custody of the Director of DPHHS may, in an appropriate case, claim a Fourteenth Amendment due process protected liberty interest in procedures carried out in effecting transfer from the State Hospital to the Montana State Prison."

Doc. 76, p. 7 (quoting Doc. 33, p. 10) (emphasis added in Doc. 76). The Court's openness to "an appropriate case" anticipates a case that satisfies the *Chappell/Sandin* "case by case" and "atypical and substantial hardship" standard. The SAC does not provide one.

The law of the case doctrine does not bind a court mindlessly to its previous rulings, but it must have a good reason to depart from its prior ruling:

> a court may depart from the law of the case and grant reconsideration only where 1) the first decision was clearly erroneous, 2) an intervening change in the law has occurred, 3) the evidence on remand is substantially different, 4) other changed circumstances exist, or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion. (citations omitted).

*United States v. Smith*, 2014 U.S. Dist. LEXIS 154807, *2-3 (E.D. Wash. Oct. 31, 2014).

None of these circumstances exists. The legal standard set forth in Doc. 33 is a clear reflection of applicable law. No intervening change in the law has occurred. The relevant factual allegations in the SAC are essentially the same as those of the original, and DRM has not identified any changed circumstances or manifest injustice in the Court applying the same legal standard to the SAC as it did to the original complaint.

DRM argues that the *Chappell/Sandin* standard applies only to internal prison regulations, and not to state statutes (Doc. 76, pp. 2, 12-13, 16). DRM misinterprets *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002) and *Carver v. Lehman*, 558 F.3d 869, 873 (n. 5) (9th Cir.2009), which are not cases distinguishing statues from regulations, but "internal" liberty interests from those involving actual release from confinement, such as parole. All "substantive predicate" cases cited by DRM are parole or early release cases; none since *Sandin* have to do with interinstitutional transfers or prison conditions. *Sandin* itself draws no distinction between statutes and regulations, citing *Wolff v. McDonnell*, 418 U.S. 539 (1974) (Nebraska prison discipline statute), *Vitek v. Jones*, 445 U.S. 480 (1980) (Nebraska psychiatric transfer statute), and *Board of Pardons v. Allen*, 482 U.S. 369 (1987) (Montana pardon statute). *Sandin,* at 483-484. Subsequent cases

confirm that the "atypical and significant hardship" standard applies to statutes and

regulations equally. *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997) ("A state

may create a liberty interest through *statutes, prison regulations, and policies*,"

(citing *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005)) (emphasis added); *Slaughter

v. Cate*, 2014 U.S. Dist. LEXIS 152612, *12 (N.D. Cal. Oct. 28, 2014) ("In

*Sandin*, the Court adopted a new test shifting the emphasis away from the language

of the *statute or regulation* purportedly creating the liberty interest to consideration

of the nature and significance of the purported liberty interest itself.") (emphasis

added).

DRM misrepresents Mont. Code Ann. § 46-14-312(2) in an attempt to find a

"substantive predicate." DRM claims, "GBMI individuals sentenced to DPHHS's

custody are not initially sentenced to the Department of Corrections specifically

because the established mental illness warrants a more therapeutic setting." (Doc.

76, p. 19). This rationale is found nowhere in the statute. It then claims "[t]he

statute mandates that a transfer of a GBMI prisoner will "better serve" the

prisoner's treatment needs." (Doc. 76 at 16), and "the transfer to another facility

must be informed and supported by evidence that the transfer will better serve

mental illness treatment." (Doc. 76, p. 16). The statute contains no such

mandates. It provides the Director "may" transfer the defendant, after considering

professional recommendations and "the defendant's custody, care and treatment

needs." Mont. Code Ann. § 46-14-312(2).  It delegates the balancing of all these factors to the Director's discretion. It is therefore entirely permissive, containing neither a predicate nor a mandate.

The United States Supreme Court found a substantive predicate in *Allen*, *supra*, where a different Montana statute provided that the parole board "shall release on parole . . . any person confined in the Montana state prison . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment." *Id.* at 376.  Here, the "opinion" is the predicate, the "shall" is the mandate.  But after a subsequent amendment substituted "may" for "shall," in *Kinlock v. Mont. Bd. of Pardons & Parole*, 2014 U.S. Dist. LEXIS 53023, *7-8 (D. Mont. Jan. 29, 2014), *adopted by, case dismissed by Kinlock v. Mont. Bd. of Pardons & Parole*, 2014 U.S. Dist. LEXIS 52078 (D. Mont., Apr. 15, 2014), the new language was found to be merely permissive, and therefore not to create a federally protected liberty interest. *Id.* at *8.

In *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009), the 9th Circuit, considering Washington's early release statute for sex offenders, clarified that the use of "may" alone cannot create a mandate:

> The distinction between "if" and "only if," however, is not a mere quibble over vocabulary--it goes right to the heart of whether the criteria of section 9.94A.728(2)(d) are necessary or sufficient conditions for transfer, and therefore whether transfer is mandatory or entirely discretionary. "May . . . only if" would be effectively identical to "shall . . . unless"; "may . . . if" is not.

9

*Id,* at 884.

Section 46-14-312(2) uses only "may," not "may only if" or "only if." The phrase "that will better serve the defendant's custody, care and treatment needs" describes the director's discretion, and is not a mandate.

> D. Under the appropriate *Chappell/Sandin* standard, transfer of a DPHHS prisoner from the general population of MSH to the general population of MSP does not constitute "atypical and significant hardship in relation to the ordinary incidents of prison life."

DRM's Opposition, like the SAC, focuses on transfer of male prisoners from MSH to MSP, not transfers of female prisoners to the Montana Women's Prison, or transfers of DPHHS prisoners to any of Montana's other correctional facilities. DRM has not challenged the transfer procedure for any of these other transfers to the "ordinary incidents of prison life."

The core of DRM's legal theory is that a transfer to MSP infringes on a protected liberty interest, not because of conditions in the general population at MSP, but because of the possibility of *subsequent* conditions, including solitary confinement, restriction of privileges, and imposition of behavior management plans, that may be imposed at the hands of MSP employees (Doc. 76, pp. 8-11). As pointed out in Defendants' Brief in Support of Motion to Dismiss (Doc. 72, pp. 11-15), Defendants may transfer prisoners to the "ordinary incidents of prison life," without federal court intervention. "The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States."

10

*Meachum v Fano*, 427 U.S. 215, 229 (1976).

DRM cites *Burchett v. Bower,* 355 F. Supp. 1278 (D. Az. 1973), as holding

that due process must be provided before a prisoner is transferred from a psychiatric

hospital to prison (Doc. 76, p. 15). However, Burchett was decided before *Sandin,*

was mentioned and disregarded in *Cruz v. Ward*, 558 F.2d 658, 661 (2d Cir.,1977),

and was distinguished as no longer "applicable law" in *Endsley v. Mayberg,* 2010

U.S. Dist. LEXIS 124166 (D. E.D. Cal., Apr.14, 2010).

> E.    The SAC fails to show that Defendants' transfers of male prisoners from MSH to MSP caused the alleged deprivation of rights "subsequently" imposed by MSP employees.

DRM argues at some length that personal participation of the Defendants is

not necessary in official capacity suits (Doc. 76, pp. 19-21). Although this is an

"official capacity" complaint under *Ex parte Young*, 209 U.S. 123, 155-156 (1908),

solely for injunctive and declaratory relief, under 42 U.S.C. § 1983 the defendant

must still be:

> *[a] person who*, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected, any* citizen of the United States or other *person* within the jurisdiction thereof *to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]*

42 U.S.C. § 1983 (emphasis added). The SAC fails to state a claim, not because it

fails to allege Defendants implementation of the transfer statute, but because

transfers under the statute do not plausibly cause the wrong complained of.

As Defendants have pointed out in their Brief (Doc. 72, pp. 16-19), DRM has not alleged that either Defendant transferred any of DRM's four named prisoner constituents, or any other DPHHS prisoner, directly to solitary confinement, administrative segregation, behavior management plans or any of the conditions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." The SAC makes only the brief and conclusory allegation that "[t]hree of the four prisoners identified by DRM as having been transferred to the State Prison without procedural due process were *subsequently* placed in solitary confinement and on behavior management plans that are dangerous to their mental health." (Doc. 67, ¶ 27 (emphasis added)).

The wrong complained of in the SAC is therefore actually the imposition of restrictive conditions at MSP. Linking Defendants' transfer procedures to the subsequent alleged infringement of liberty interests requires an inference that the process a DPHHS prisoner receives at the time of transfer is the only due process the prisoner receives before being placed in the specified conditions, months or years later at MSP. This is not only purely speculative, but highly implausible in a modern correctional environment. If these conditions truly involve "atypical and significant hardships" under *Sandin* and *Chappell*, a rights-protecting process is due at MSP where the conditions are first proposed, not at MSH.

The causation element of a § 1983 claim cannot be fulfilled by an

implausible inference. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). DRM has demonstrated no reluctance to criticize MSP, but it has assiduously refrained from any reference to the due process MSP itself provides when the challenged conditions are imposed. It cannot rely on the Court to fill this factual void with the implausible inference that there is none.

The possibility *at the time of transfer* that these conditions may be *wrongfully* imposed by MSP employees at some later time without further due process is too speculative, and the causative link too attenuated, to support a claim that Defendants, in their official capacities, deprived or are likely to deprive DRM's prisoner constituents of a liberty interest by simply transferring them to MSP. *Sandin,* at 487 ("The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.").

The relief DRM requests, a prospective change in DPHHS procedures for transferring male prisoners to MSP, before restrictive conditions are even proposed, would provide meaningless "due process" in a factual vacuum. Similarly, the Court cannot possibly assess the circumstances of unknown future prisoners at the time of transfer on a "case by case" or "fact by fact" basis, making

injunctive or declaratory relief inappropriate.

This is not a question of "personal involvement." The SAC simply fails to allege a plausible causal connection between Defendants' alleged transfers of DPHHS prisoners to MSP and the denial of due process, based on conditions imposed by MSP subsequent to the transfer.

## III. Conclusion

DRM's Second Amended Complaint fails to state a claim upon which relief can be granted, because it does not allege facts to support that Defendants' implementation of the DPHHS director's transfer authority under Mont. Code Ann. § 46-14-312(2) infringes on the federally recognized liberty interests of DPHHS prisoners. The statute does not contain a "substantive predicate" which on its own creates a federally recognized liberty interest; it vests the permissive balancing of "custody, care, and treatment needs" of a prisoner entirely in the DPHHS director. The conditions into which Defendants allegedly transfer DPHHS prisoners are nothing more than "the ordinary incidents of prison life." There is no allegation of a plausible causal connection between these transfers and any subsequent unlawful imposition of more restrictive living conditions at MSP.

The Court should affirm the legal standard adopted in its Order dismissing DRM's original complaint (Doc. 33) and dismiss the Second Amended Complaint on the same grounds, this time with prejudice.

Date:  July 24, 2015.

_____
Francis X. Clinch

_____
Paulette Kohman

Attorneys for Defendants Opper and Glueckert


## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2), D. Mont. L.R. (April 7, 2014), I certify that this brief is printed with proportionally spaced Times New Roman font of 14-point size; is double-spaced, contains a word count of 3225 excluding the Caption and Certificate of Compliance, according to Microsoft Word 2010.

DATED this 24th day of July, 2015.

_____
Paulette Kohman
Special Assistant Attorney General